1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10    RICHARD MANUEL BURGOS,

11              Petitioner,                     No. CIV S-04-0021 FCD DAD P

12        vs.

13    M. YARBOROUGH, et al.,

14              Respondents.                    FINDINGS & RECOMMENDATIONS

15    _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18    entered in the San Joaquin County Superior Court following his plea of no contest to charges of

19    first degree residential robbery, residential burglary and being a felon in possession of a firearm,[1]

20    as well as to three commercial burglaries.  He seeks relief on the grounds that: (1) his appellate

21    counsel rendered ineffective assistance by failing to raise numerous issues on appeal; (2) his plea

22    of no contest was involuntary; (3) cumulative error violated his right to due process; (4) the

23    California Court of Appeal erroneously rejected one of his claims; and (5) California Penal Code

24    § 296 is violative of the federal constitution.  Upon careful consideration of the record and the

25    _____

26        [1]  It is undisputed that these first three charges to which petitioner pled no contest arose
      from a home invasion robbery.

                                                   1

1  applicable law, the undersigned will recommend that petitioner's application for habeas corpus

2  relief be denied.

3                    PROCEDURAL AND FACTUAL BACKGROUND[2]

4                    In an amended Information filed August 22, 1997, petitioner was charged with

5  one count of first degree residential burglary in violation of California Penal Code § 212.5(a) in

6  which the victim was 60 years of age or older (California Penal Code § 1203.09) with use of a

7  firearm (California Penal Code § 12022.5(A)); one count of first degree residential burglary in

8  violation of California Penal Code § 459 in which the victims were both 60 years of age or older

9  and with use of a firearm; three counts of commercial burglary in violation of California Penal

10  Code § 459; and one count of being a convicted felon in possession of a firearm in violation of

11  California Penal Code § 23032.2(A).  (Clerk's Transcript on Appeal (CT) at 410-19.)  It was also

12  alleged that petitioner had suffered two prior serious felony convictions and had served one prior

13  prison term within the meaning of California Penal Code §§ 667(A), 667.5(B) and 1170.12(B).

14  (Id.)

15                    After the trial court dismissed two assaults charged as strikes
                      because it could not determine whether defendant, as required
16                    under the "Three Strikes" law, personally used a firearm in those
                      offenses,[3] defendant Richard Manuel Burgos pleaded no contest to
17                    three offenses arising from a home invasion robbery and three
                      commercial burglaries.[4]  In addition, he admitted elderly victim
18                    and firearm use allegations as well as a prior prison term charge.[5]
                      A jury trial was held as to a remaining strike allegation.  The jury
19                    could not reach a verdict, a mistrial was declared, and this strike
                      allegation was dismissed.
20

21                    [2]  Part of the following summary is drawn from respondents' Lodged Document No. 4,
22  the March 14, 2000 opinion by the California Court of Appeal for the Third Appellate District
    (hereinafter Opinion), at pgs. 1-6.  The facts described by the California Court of Appeal provide
23  the background to several of the claims raised by petitioner before this court.

24                    [3]  California Penal Code sections 667, subdivision (d)(1); 1192.7, subdivision (c)(8).
    Further undesignated statutory references are to the California Penal Code.

25                    [4]  Sections 212.5, subdivision (a), 459.

26                    [5]  Sections 667.5, subdivision (b), 1203.09, 12022.5, subdivision (a).

                                                    2

Thereafter, defendant moved unsuccessfully to withdraw his plea. At the hearing on that motion, defendant was represented by an attorney specially appointed to bring the motion.  Prior to the ruling and again prior to sentencing, defendant requested that his trial attorney be replaced.  Those requests were denied and the court sentenced defendant to an unstayed term of 19 years and 8 months.

* * *

Prior to his plea, defendant had obtained a substitution of counsel and had made two Marsden motions.  As for the substitution, public defender William Dittman was replaced by public defender William Fattarsi on June 18, 1997.  As for the two pre-plea Marsden motions, defendant unsuccessfully moved to replace attorney Fattarsi on July 14, 1997, but successfully moved to replace him on August 13, 1997.

The successful pre-plea Marsden  motion centered on Fattarsi's concession that he should have more diligently acted to recuse the prosecutor, who had prosecuted defendant years earlier.  Although the trial court granted the Marsden motion, it warned defendant that new counsel would know nothing of defendant's case and would have to work relatively quickly.  Following these admonishments, defendant elected to continue with attorney Fattarsi, so long as the recusal motion was undertaken.  That motion was undertaken, but unsuccessfully.

Nearly four months after entering his plea, defendant himself filed a motion to withdraw it; the motion was based almost entirely on ineffective assistance of counsel, but also mentioned a medical condition of defendant's (nerve damage to his head that causes dizziness and headaches and impairs concentration) as well as improper access to legal materials.  In a preprinted form and in a declaration, defendant raised a litany of challenges to the representation provided by attorneys William Dittman and William Fattarsi.  These challenges encompassed almost every conceivable ground of attorney deficiency.

Private attorney John Casenave was appointed solely to represent defendant on his motion to withdraw his plea.  Casenave filed some additional papers to support that motion, including an additional declaration from defendant explaining how he was unable to concentrate at the time of his plea because of his medical condition.

Just before the motion to withdraw was argued, the following colloquy took place between attorney Casenave and the trial court:

"MR. CASENAVE:  John Casenave.  I've been appointed to represent [defendant] on the motion to withdraw his plea.  His

3

attorney Mr. Fattarsi I understand is in a courtroom in another trial. [¶] . . . [¶]

"THE COURT:  Mr. Casenave, did you have something else you wished to say?

"MR. CASENAVE:  . . . [B]efore we get started with the motion to withdraw the plea [defendant] had a request of you, the Court. Judge, I'll tell you what [defendant] wants.  [¶]  I'm not representing him on this because the Court appointed me specifically to do the motion to withdraw the plea.  It has something to do with that – what [defendant] is asking for is the Court to hear a Marsden motion before we do the withdrawal of the plea regarding the Public Defender's office.  There's some case law he has.  [¶]  He feels that one of the reasons for the withdrawal of his plea is ineffective assistance of counsel, and he believes that he has the right to have a Marsden hearing prior to the Court hearing the . . . the motion to withdraw . . . the plea.

"THE COURT:  We've already had a Marsden motion.

"MR. CASENAVE:  Had several.

"THE COURT:  I'm going to deny it.

"MR. CASENAVE:  He would like to recite the case . . . It's 470 U.S. 1049, William Lloyd Hill, petitioner, versus A.L. Lockhart, Director, Arkansas Department of Corrections.

"THE COURT:  And it's cited to me for what purpose?

"MR. CASENAVE:  He believes he has the right to have a Marsden hearing prior to the motion to withdraw his plea.

"THE COURT:  Well, since we've already had several Marsden motions in this matter, the request is going to be denied."

The court proceeded to hear the motion to withdraw, including defendant's testimony.  Defendant detailed the allegedly ineffective assistance of counsel he had received from public defenders Dittman and Fattarsi during their entire representation.

The court then denied the motion to withdraw the plea, explaining in part, "As to the ineffective assistance of counsel, most of what we talked about was already discussed I think at the earlier Marsden motion.  And I've heard nothing new that would cause me to revisit that."

The court then proceeded to sentencing.  Public defender Fattarsi was again now representing defendant, and the following colloquy ensued:

4

1    "MR. FATTARSI:  [Defendant] has just advised me he would like
     a <u>Marsden</u>.

2
     "THE COURT:  No.  We've been through that multiple times.
3    There will be no further Marsdens."

4    (Opinion at 1-6.)

5            Petitioner filed a timely appeal of his judgment of conviction in the California

6    Court of Appeal for the Third Appellate District.  (Resp'ts' Lodged Doc. No. 1.)  On appeal he

7    argued that the trial court erred by not allowing him to explain the reasons for his two post-plea

8    <u>Marsden</u> motions.  (<u>Id.</u>)  In a reasoned decision, petitioner's judgment of conviction was affirmed

9    in its entirety.  (Resp'ts' Lodged Doc. No. 4.)  On April 23, 2001, petitioner filed a petition for

10   review in the California Supreme Court.  (Resp'ts' Lodged Doc. No. 5.)  That petition was

11   summarily denied by order filed June 13, 2001.  (Resp'ts' Lodged Doc. No. 6.)

12           On November 8, 2001, petitioner filed a petition for writ of habeas corpus in the

13   California Superior Court.  (Resp'ts' Lodged Doc. No. 7.)  That petition was denied in a

14   reasoned decision dated May 13, 2002.  (Resp'ts' Lodged Doc. No. 8.)  On May 29, 2002,

15   petitioner filed a petition for a writ of habeas corpus in the California Court of Appeal.  (Resp'ts'

16   Lodged Doc. No. 9.)  That petition was summarily denied.  (Pet'rs Lodged Doc. No. 10.)

17           On June 12, 2002, petitioner filed another petition for a writ of habeas corpus in

18   the California Superior Court.  (Resp'ts' Lodged Doc. No. 13.)  That petition was denied in a

19   reasoned decision dated July 10, 2003.  (Resp'ts' Lodged Doc. No. 14.)

20           On June 19, 2002, petitioner filed a petition for a writ of habeas corpus in the

21   California Supreme Court.  (Resp'ts' Lodged Doc. No. 11.)  That petition was summarily denied

22   by order dated March 5, 2003.  (Resp'ts' Lodged Doc. No. 12.)

23           On August 21, 2003, petitioner filed a second petition for a writ of habeas corpus

24   in the California Court of Appeal.  (Resp'ts' Lodged Doc. No. 15.)  That petition was summarily

25   denied by order dated September 4, 2003.  (Resp'ts' Lodged Doc. No. 16.)

26   /////

1          On January 5, 2004, petitioner filed a petition for a writ of habeas corpus in this

2  court.

3          On January 29, 2004, petitioner filed a second petition for a writ of habeas corpus

4  in the California Supreme Court.  (Resp'ts' Lodged Doc. No. 17.)  That petition was summarily

5  denied by order dated December 1, 2004.  (Resp'ts' Lodged Doc. No. 18.)

6          On April 29, 2004, petitioner filed an amended petition for a writ of habeas corpus

7  in this court.

8          On May 28, 2004, petitioner filed a third petition for a writ of habeas corpus in the

9  California Supreme Court.  (Resp'ts' Lodged Doc. No. 19.)  That petition was summarily denied

10  by order dated December 1, 2004.  (Resp'ts' Lodged Doc. No. 20.)

11          On January 5, 2005, petitioner filed a second amended petition for a writ of

12  habeas corpus in this court, upon which this action is proceeding.

13                                   ANALYSIS

14  I.  Standards of Review Applicable to Habeas Corpus Claims

15          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

16  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

17  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

18  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

19  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

20  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

21  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

22  (1972).

23          This action is governed by the Antiterrorism and Effective Death Penalty Act of

24  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

25  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

26  habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II.  Petitioner's Claims

A.  No Contest Plea (Claim V)

Petitioner claims that his plea of no contest was "not knowingly, intelligently or voluntarily made" because it was based on "incompetent advice" from his counsel.  (Amended Petition (Pet.) at 6u.)  Petitioner argues that his trial counsel (William Fattarsi) was not prepared to defend him because counsel refused to visit or respond to letters from petitioner, failed to return phone calls from petitioner's family and friends offering to help with petitioner's defense,

failed to investigate and obtain exonerating evidence, and refused to file a motion seeking the

recusal of the prosecutor.  (Id. at 6u-6v.)  Petitioner further alleges:

> Mr. Fattarsi advised petitioner to plea [sic] guilty to every charge
> with the exception of the last strike prior and serious felony prior.
> Mr. Fattarsi advised petitioner that the maximum time for all
> charges is 19 years, and 8 months!  Petitioner was sentenced to 19
> years, and 8 months.  Mr. Fattarsi advised petitioner that the only
> way to win a dismissal of the last strike prior is to plea [sic] guilty
> to everything, so that the court will entertain a motion to dismiss
> the last strike prior.
>
> Mr. Fattarsi advised petitioner that he should plea [sic] guilty to all
> charges, no plea bargain, in order for the Court to hear a third
> motion to dismiss the last strike prior.  Petitioner no longer had any
> confidence in the Court to enforce his fundamental rights, and
> allowing Mr. Fattarsi to continue representing petitioner, petitioner
> believe [sic] that his only option to have the court hear a third
> hearing to dismiss the strike prior, was to plea [sic] guilty to all
> charges without a plea bargain.

(Id. at 6g, 6w.)  Petitioner argues that his trial counsel's recommendation to plead guilty was not

based on a "full and effective preparation of his client's case" because counsel failed to

investigate and produce evidence exonerating petitioner of the commercial burglaries and the

home invasion robbery.  (Id. at 6w-6x.)  Petitioner provides a conclusory description of all the

exculpatory evidence, including fingerprint evidence and eyewitness testimony, attorney Fattarsi

could have presented at a trial if he had conducted sufficient investigation,.  (Id. at 6w-6z.)

Petitioner states that if counsel had conducted a thorough investigation and obtained this

exculpatory evidence or even a portion thereof, petitioner would not have pled guilty but would

have "continued to trial if necessary."  (Id. at 6z.)

The San Joaquin County Superior Court rejected petitioner's claims in this regard

on the grounds that he had "submitted no evidence to suggest that he would not have entered a

guilty plea but for his counsel's perceived incompetence."  (Resp'ts' Lodged Doc. No. 8 at 2.)

The court concluded that petitioner's "vague or conclusionary allegations" did not warrant

habeas relief.  (Id.)

/////

1       Petitioner's claim appears to rest upon two arguments: (1) he received ineffective

2   assistance of counsel because deputy public defender Fattarsi was unprepared to represent him at

3   a trial, largely because he failed to conduct adequate investigation; and (2) attorney Fattarsi

4   provided petitioner erroneous or misleading advice regarding the reasons supporting the entry of

5   a no contest plea, thereby rendering petitioner's plea involuntary.

6       Petitioner's contention that his trial attorney was ineffective by failing to conduct

7   sufficient investigation into his case is not cognizable in this habeas corpus action.  Counsel's

8   alleged failures to investigate and prepare occurred prior to the entry of petitioner's plea.  "When

9   a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense

10  with which he is charged, he may not thereafter raise independent claims relating to the

11  deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v.

12  Henderson, 411 U.S. 258, 267 (1973).  See also McMann v. Richardson, 397 U.S. 759, 770-71

13  (1970); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994) ("As a general rule, one who

14  voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on

15  the basis of pre-plea constitutional violations"), overruled on other grounds in Lockyer v.

16  Andrade, 538 U.S. 63, 75-76 (2003); Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992)

17  ("petitioner's nolo contendere plea precludes him from challenging alleged constitutional

18  violations that occurred prior to the entry of that plea"); Hudson v. Moran, 760 F.2d 1027, 1029-

19  30 (9th Cir. 1985) (voluntary and intelligent guilty plea precludes federal habeas relief based

20  upon "independent claims" of pre-plea constitutional violations).  But cf. Creech v. Arave, 947

21  F.2d 873, 876-79 (9th Cir. 1991) (habeas appeal addressed petitioner's argument that counsel

22  failed to provide certain information prior to the entry of his plea), rev'd on other grounds, 507

23  U.S. 463 (1993).

24      Petitioner's claim that his counsel failed to conduct adequate investigation is a

25  claim of a pre-plea constitutional violation that does not implicate the voluntary or intelligent

26  nature of petitioner's guilty plea and therefore has been waived.  See United States v. Bohn, 956

9

F.2d 208, 209 (9th Cir. 1992).  To the extent petitioner is claiming that because of a lack of investigation his counsel was not prepared to provide petitioner fully informed advice as to whether to plead no contest or go to trial, his vague and conclusory allegations are insufficient to support any such claim.

Assuming arguendo that petitioner's claim in this regard has not been waived and raises a cognizable federal constitutional issue, for the reasons set forth below the court rejects the claim on the merits.

A guilty plea must be knowing, intelligent and voluntary.  Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).[6]  "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it."  Brady, 397 F.2d at 749.  In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court addressed the presumption of verity to be given the record of plea proceeding when the plea is subsequently subject to a collateral challenge.  While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity."  Id. at 74.  See also Marshall v. Lonberger, 459 U.S. 422, 437 (1983) (plea is presumed valid in habeas proceeding when the pleading defendant was represented by counsel); Little v. Crawford, 449 F.3d 1075, 1081 (9th Cir. 2006); Chizen v. Hunter, 809 F.2d 560, 561 (9th Cir. 1986).  The record must affirmatively show that a criminal defendant's guilty plea is intelligent and voluntary.  Boykin, 395 U.S. at 242-43.

---

[6]  Petitioner pled nolo contendere, or "no contest" to the charges against him.  Under California law, a plea of nolo contendere has the same effect as a plea of guilty in the context of the criminal proceedings.  See, e.g., People v. West, 3 Cal. 3d 595 (1970).  Accordingly, federal constitutional principles governing guilty pleas apply to petitioner's claim.  Miller v. McCarthy, 607 F.2d 854, 856 (9th Cir. 1979).

1          Under Boykin, the record must reflect that a criminal defendant pleading guilty

2   understands, and is voluntarily waiving, his rights to the privilege against compulsory

3   self-incrimination, to trial by jury and to confront one's accusers.  395 U.S. at 243.  However,

4   specific articulation of the Boykin rights "is not the sine qua non of a valid guilty plea."  Wilkins

5   v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974).  Rather, if the record demonstrates that a guilty

6   plea is knowing and voluntary, "no particular ritual or showing on the record is required."

7   United States v. McWilliams, 730 F.2d 1218, 1223 (9th Cir. 1984).

8          After a review of the record in this case, the undersigned concludes that

9   petitioner's plea of not guilty by reason of insanity was voluntarily made, with knowledge of the

10  consequences thereof.  See Boykin, 395 U.S. at 243.  There was a full and complete colloquy

11  between the court and petitioner at the time he entered his plea.  (Reporter's Transcript on

12  Appeal (RT) at 5-18.)  Petitioner stated that he was not under the influence of any drug or

13  medication.  (Id. at 8.)  He voluntarily waived his rights to a speedy trial and to a trial by jury, the

14  right to confront his accusers and his right against self-incrimination.  (Id. at 8-9.)  Petitioner

15  answered in the affirmative when asked whether he had enough time to speak to his attorney

16  about his case.  (RT at 9.)  Petitioner's counsel agreed that he had sufficient time to discuss the

17  case with petitioner, including "any rights, defenses and consequences he might have."  (Id. at 9-

18  10.)  Counsel also stated that he had advised petitioner of the effect of petitioner's "actions or

19  waivers."  (Id. at 10.)  Petitioner stated he was entering his plea freely and voluntarily and that

20  no-one had made any threats or promises to get him to enter his plea.  (Id. at 12.)   Petitioner had

21  notice of the nature of the charges against him.  (Id. at 13-18.)  See Lonberger, 459 U.S. at 436

22  (in order for a plea to be voluntary, an accused must receive notice of the nature of the charge

23  against him, "the first and most universally recognized requirement of due process") (quoting

24  Smith v. O'Grady, 312 U.S. 329, 334 (1941)).  This is sufficient for purposes of federal habeas

25  review.  Lonberger, 459 U.S. at 436.

26  /////

1    Although petitioner makes numerous allegations regarding possible exculpatory

2  evidence that his attorney could have uncovered if he had conducted a more detailed

3  investigation, petitioner has failed to substantiate these allegations with documents, exhibits, or

4  declarations.  Petitioner's vague and unsupported claims in this regard are insufficient to support

5  his claim of ineffective assistance of counsel.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir.

6  1995); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).  An attorney has no duty to advise his

7  client of every conceivable defense or pursue every factual inquiry.  Tollett, 411 U.S. at 267-68;

8  Iaea v. Sunn, 800 F.2d at 861, 865 n.4 (9th Cir. 1986).  On the contrary, the petitioner must show

9  such a  "serious dereliction" by his attorney that the guilty plea was not a knowing and intelligent

10  act.  McMann, 397 U.S. at 774.  Petitioner has failed to make such a showing here.

11    Petitioner also claims that his trial counsel gave him erroneous advice in order to

12  induce him to plead no contest.  Specifically, he contends that his counsel advised him to plead

13  no contest so that the trial court would entertain a motion to dismiss the last remaining "strike"

14  allegation, and further advised him that the maximum sentence he could receive was 19 years and

15  8 months.  (Pet. at 6w, 6aa.)

16    A defendant may attack the voluntary and intelligent character of his plea by

17  showing that he received incompetent advice from counsel in connection with the plea.  Tollett,

18  411 U.S. at 267 (a defendant who pleads guilty upon the advice of counsel "may only attack the

19  voluntary and intelligent character of the guilty plea by showing that the advice he received from

20  counsel was not within the standards set forth in McMann" [v. Richardson, 397 U.S. 759 (1970)]

21  (holding that all defendants facing felony charges are entitled to the effective assistance of

22  competent counsel); Mitchell v. Superior Court for City of Santa Clara, 632 F.2d 767, 769-70

23  (9th Cir. 1980).  To prevail on such a claim, a petitioner must show that: (1) counsel's

24  representation fell below the range of competence demanded of attorneys in criminal cases, and

25  (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded

26  guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).

1    Petitioner has failed to satisfy either of these two requirements.  Counsel's advice

2   to petitioner to plead no contest in order to concentrate on dismissing the "strike" allegation was

3   a reasonable tactical strategy that resulted in a significantly reduced sentence for petitioner.[7]  In

4   addition, counsel's advice with regard to the possible sentence petitioner could receive turned out

5   to be correct.  Under these circumstances, trial counsel's representation did not fall below the

6   wide range of competence demanded of attorneys in criminal cases.  Petitioner has also failed to

7   demonstrate that, but for counsel's advice, he would have proceeded to trial.  His conclusory

8   statement that he would had "continued to trial if necessary" is too vague to establish prejudice

9   and is not credible in light of the success of trial counsel's strategy.

10   For all of these reasons, petitioner is not entitled to relief on his claim that his plea

11   was involuntary.

12   B.  Ineffective Assistance of Appellate Counsel

13   In claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, and 13, petitioner contends that his appellate

14   counsel rendered ineffective assistance because of his failure to raise specific claims on appeal.[8]

15

16   [7] Petitioner himself informs this court that the prosecution originally represented that he
    faced a sentence of "300 years to life under the Three Strikes Law."  (Pet. at 6b.)

17

18   [8] Respondents argue that petitioner's claims 3 and 8 are "partially unexhausted."
    (Answer at 3.)  The exhaustion of available state remedies is a prerequisite to a federal court's

19   consideration of claims sought to be presented in habeas corpus proceedings.  See Rose v. Lundy,
    455 U.S. 509 (1982); 28 U.S.C. § 2254(b).  However, "[a]n application for a writ of habeas

20   corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the
    remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  A federal court

21   considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly
    clear that the claim is not "colorable."  Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

22   Notwithstanding petitioner's alleged failure to fully exhaust claims 3 and 8 in state court, this
    court will recommend that habeas relief be denied on the merits of these claims for the reasons

23   explained below.  Petitioner's claims are not "colorable" and he is therefore not entitled to
    habeas relief.  Respondents also argue that many of petitioner's claims of ineffective assistance

24   of appellate counsel are not cognizable in this habeas petition because they relate, in essence, to
    the alleged deprivation of constitutional rights prior to the entry of petitioner's no contest plea.

25   See Tollett, 411 U.S. at 258.  However, petitioner's claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, and 13 are
    not pled as separate constitutional violations but are couched in terms of ineffective assistance of

26   appellate counsel.  Accordingly, Tollett appears to be inapplicable to these claims and this court
    will therefore evaluate them on their merits as well.

1  After setting forth the applicable legal standards, the court will evaluate these claims in turn

2  below.

3        1.  <u>Legal Standards</u>

4        The Sixth Amendment guarantees the effective assistance of counsel.  The United

5  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

6  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  The benchmark for assessing claims of

7  ineffective assistance of counsel is "whether counsel's conduct so undermined the proper

8  functioning of the adversarial process that the trial cannot be relied on as having produced a just

9  result."  <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1051 (9th Cir. 2003) (quoting <u>Strickland</u>, 466 U.S. at

10  686).  A petitioner must first show that, considering all the circumstances, counsel's performance

11  fell below an objective standard of reasonableness.  <u>Strickland</u>, 466 U.S. at  687-88.  After a

12  petitioner identifies the acts or omissions that are alleged not to have been the result of

13  reasonable professional judgment the court must determine whether, in light of all the

14  circumstances, the identified acts or omissions were outside the wide range of professionally

15  competent assistance.  <u>Id.</u> at 690; <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003).

16        Second, a petitioner must establish that he was prejudiced by counsel's deficient

17  performance.  <u>Strickland</u>, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

18  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

19  been different."  <u>Id.</u> at 694.  A reasonable probability is "a probability sufficient to undermine

20  confidence in the outcome."  <u>Id.</u>  <u>See also</u> <u>Williams</u>, 529 U.S. at 391-92; <u>Laboa v. Calderon</u>, 224

21  F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's

22  performance was deficient before examining the prejudice suffered by the defendant as a result of

23  the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

24  lack of sufficient prejudice . . . that course should be followed."  <u>Pizzuto v. Arave</u>, 280 F.3d 949,

25  955 (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 697).

26  /////

1    In assessing an ineffective assistance of counsel claim "[t]here is a strong

2  presumption that counsel's performance falls within the 'wide range of professional assistance.'"

3  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

4  is in addition a strong presumption that counsel "exercised acceptable professional judgment in

5  all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

6  Strickland, 466 U.S. at 689).

7    The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

8  v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

9  However, an indigent defendant "does not have a constitutional right to compel appointed

10  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

11  professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

12  (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

13  ability of counsel to present the client's case in accord with counsel's professional evaluation

14  would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

15  Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

16  not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

17  meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

18  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

19  to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

20  context, petitioner must demonstrate that, but for appellate counsel's errors, he probably would

21  have prevailed on appeal.  Id. at 1434 n.9.

22    2.  Petitioner's Transfer to Another Prison (Claim I)

23    Petitioner's first claim is stated as follows:

24    [A]ppellate counsel was ineffective for failing to raise on direct
    appeal that petitioner's no contest plea was not knowing,

25    intelligent, or voluntarily made when the court ruled that it was
    okay to allow petitioner to be transferred to Tracy State Prison

26    from the local county jail despite petitioner's arguments that he

15

1              was a pretrial and unsentenced detainee and that he was being
denied access to counsel and meaningful access to the courts and

2              an opportunity to prepare a defense, in violation of the 5th, 6th and
14th Amendments to the United States and California

3              Constitutions.

4  (Pet. at 6a.)

5           Petitioner informs this court that while he was still a pretrial detainee he was

6  transferred from the local San Joaquin County Jail to Tracy State Prison.  (Id. at 6b.)  Petitioner

7  states that he did not consent to the transfer and that "no court order was issued by the Superior

8  Court to conduct the transfer to Tracy State Prison, as a pretrial and unsentenced detainee." (Id.)

9  Petitioner explains that at Tracy State Prison his life was in danger, the prison facilities were

10  substandard, he was treated like a convicted prisoner and he was not allowed access to his

11  records or his attorneys.  (Id. at 6b-6c.)  Petitioner contends that his transfer to a prison violated

12  his right of access to the courts, his right to counsel and his right to be free from cruel and

13  unusual punishment.  He also now claims that he pled no contest out of the "stress and fear"

14  occasioned by his incarceration at Tracy State Prison.  (Traverse at consecutive p. 8.)

15           The record reflects that petitioner was transferred from the local jail to state prison

16  as a result of jail overcrowding.  At one point during the underlying proceedings, petitioner's

17  public defender, Mr. Fattarsi, asked the trial judge for an order requiring that petitioner be

18  transferred back to the San Joaquin County Jail.  (RT at 435.)  The judge responded that there

19  was a "litigational jail cap" in place and, for that reason, he couldn't "guarantee" that petitioner

20  would be returned to the local jail.  (Id.)  Later, attorney Casenave requested that the trial court

21  keep petitioner at the local jail so that Casenave could meet with him.  (Id. at 440-41.)  The trial

22  judge responded, "Regularly I order that prisoners be held here but that is subject to the jail cap

23  and as soon as that comes up, they start moving the sentenced prisoners out." (Id. at 441.)  Later

24  in the proceedings, when attorney Casenave asked that petitioner remain in the county jail, the

25  trial judge explained that even if he entered such an order, the prison transfer situation was

26  ultimately dictated by the "jail cap." (Id. at 465.)

1          The San Joaquin County Superior Court rejected petitioner's claim in this regard,

2  explaining its reasoning as follows:

> It is true that "[i]f a parolee who is undergoing criminal prosecution is ordered returned to custody, the parolee shall be retained in local custody under a parole hold until termination of the prosecution."  Title 15, section 3901.21.16(c).  It is also true that "[a] parolee may be returned to prison on an emergency basis if he cannot by physically retained in local custody pending a hearing, as certified in writing by the local detaining agency."  Title 15, section 2605(b).
>
> The record suggests that Petitioner was transferred to Deuel Vocational Institute because he could no longer be housed by the San Joaquin County Jail.  Petitioner has made no showing that his transfer was not authorized and/or appropriate.

10  (Resp'ts' Lodged Doc. No. 8 at 2.)

11          Petitioner has failed to demonstrate that he suffered any prejudice with respect to

12  his claim that his appellate counsel rendered ineffective assistance by failing to challenge

13  petitioner's transfer to Tracy State Prison.  In this regard, California Penal Code § 1237.5

14  provides as follows:

> No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere . . . except where both of the following are met:
>
> (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings.
>
> (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court.

21  Pursuant to this code section, when a defendant has pled guilty or nolo contendere to the charges

22  against him, issues going to the determination of guilt or innocence are not cognizable on appeal.

23  Under California law, review in such cases is instead limited to issues going to the jurisdiction of

24  the court or the legality of the proceedings, including the constitutional validity of the plea.  See

25  People v. DeVaughn, 18 Cal. 3d 889, 895-896 (1977); People v. Ribero, 4 Cal. 3d 55, 63 (1971);

26  People v. Laudermilk, 67 Cal. 2d 272, 281-282 (1967).  A guilty plea also waives any irregularity

in the proceedings which would not preclude a conviction.  See People v. Nooner, 205 Cal. App. 2d 723, 725-26 (1962).  After a guilty plea, a defendant can raise only those questions which go to the power of the state to try him despite his guilt.  People v. Turner, 171 Cal. App. 3d 116, 126 (1985).  In other words, in the language of the statute, under California law a defendant under such circumstances can only raise "grounds going to the legality of the proceedings."  Id.

Pursuant to the authorities cited above, petitioner's appellate counsel could not raise an issue on appeal challenging petitioner's pre-plea transfer to Tracy State Prison because any such claim was waived by petitioner's no contest plea.  Counsel's failure to present a meritless claim does not constitute ineffective assistance of counsel.  Put another way, petitioner has failed to show that he probably would have prevailed on appeal if his appellate counsel had raised the claim that his plea was involuntary because of his transfer to Tracy State Prison.

In any event, any such claim lacks merit.  Essentially, petitioner is arguing that because of the prison transfer he was unable to have sufficient access to his attorneys and the court.  However, at the plea colloquy petitioner stated, and his counsel agreed, that petitioner had adequate time to speak to his counsel about his plea of no contest.  (RT at 9-10.)  Petitioner has failed to identify any claim, argument, or motion that he was unable to present to the trial court as a result of his transfer to a prison.  Petitioner did not ask any questions at the change of plea hearing and he did not raise any concerns or problems.  As described above, the record reflects that petitioner received effective assistance of counsel and that his plea of no contest was voluntary, notwithstanding the conditions at the prison.  Accordingly, for all of these reasons, petitioner is not entitled to relief on this claim.

### 3.  Pretrial Detention /Cruel and Unusual Punishment (Claim II)

Petitioner claims that his appellate counsel rendered ineffective assistance:

for failure to raise on direct appeal that the trial court cannot obtain a conviction by inflicting upon petitioner (a pretrial and unsentenced detainee) cruel and unusual punishment before petitioner incurred a felony conviction and received a state prison sentence, in violation of the 5th, 6th, 8th, and 14th Amendments to the United States and California constitutions.

(Pet. at 6m.)  Petitioner argues that the trial court and his trial counsel were aware that unlawful

transfers of pretrial detainees to prisons were occurring and that detainees and convicted inmates

were thus being housed together and treated in the same inhumane manner.  (Id. at 6m-6p.)

Petitioner argues that:

> The terrible condition suffered by petitioner as a
> pretrial/unsentenced detainee, and the fact that the court ignored
> petitioner's pleas for help to stay at the county jail and allowed this
> to happen to petitioner over and over again, plus the fact that
> defense counsel refused to help petitioner stop there [sic] transfers
> to Tracy State Prison as a pretrial detainee, influence petitioner's
> decision to plea guilty because petitioner's constitutional rights
> were ignored and what chance would he have at trial.  Counsel's
> and the court's actions mislead petitioner to believe he had no
> other choice but to plea guilty.

(Id. at 6p.)

As with the claim addressed above, petitioner waived this claim when he pled no

contest.  Accordingly, appellate counsel did not render ineffective assistance by failing to present

a claim that petitioner suffered cruel and unusual punishment as a result of his transfer to Tracy

State Prison.  In addition, for the reasons described in addressing the claim above, petitioner has

failed to demonstrate that the conditions of his confinement at Tracy State Prison had any impact

on his decision to plead no contest.  Accordingly, petitioner is not entitled to relief on this claim.

> 4.  Accepting Petitioner's Plea After his Marsden Motion was Granted (Claim III)

Petitioner's next claim is stated as follows:

> Appellate counsel is ineffective for failing to raise on direct appeal
> that the trial court errored [sic] when it accepted petitioner's no
> contest plea and conducted further court proceeding after having
> granted the petitioner's "Marsden Motion" based on ineffective
> assistance of counsel, in violation of the 5th, 6th and 14th
> Amendments to the United States and California Constitutions."

(Pet. at 6q.)

As explained above, the California Court of Appeal found that although the trial

court granted petitioner's second Marsden motion and agreed to substitute in a different attorney

for attorney Fattarsi, petitioner elected to continue with Fattarsi as long as Fattarsi agreed to file a

recusal motion against the prosecutor.  Petitioner contends that he only agreed to continue with

attorney Fattarsi under very limited circumstances.  He offers the following explanation:

> Petitioner and counsel proposed a limited agreement that included numerous conditions.  Both parties agreed that if petitioner agreed to allow Mr. Fattarsi to only represent a recusal motion against the prosecutor Michael D. Bowers, and a motion to dismiss the last alleged "strike prior."  If successful on the recusal motion, the case would be dismissed.  New counsel would be appointed along with a new prosecutor who had no history with petitioner."

(Id.)  Petitioner states that he did not "withdraw or waive the granted Marsden motion."  (Id.)  He

states that he believed attorney Fattarsi "would only represent the 'recusal motion and motion to

dismiss the strike prior.'"  (Id.)  Petitioner contends that the trial court improperly forced him to

choose between his right to a speedy trial (in order to obtain substitute counsel) and his right to a

competent attorney, without advising him of the constitutional rights that were implicated by

making such a choice.  (Id.)

The San Joaquin County Superior Court rejected petitioner's argument in this

regard, reasoning as follows:

> The record reflects that upon being advised by the court that it intended to grant Petitioner's Marsden motion, Petitioner requested that the public defender, who was the subject of the Marsden motion, continue to represent him on certain other aspects of this case.  To that statement, the court advised Petitioner that if the motion was granted, counsel could not continue to represent Petitioner at all.  Petitioner then withdrew his Marsden motion.  As a result, the public defender continued to represent Petitioner and represented him at the "Change of Plea" hearing where his plea of no contest was accepted by the court.

(Resp'ts' Lodged Doc. No. 8 at 2-3.)

The record supports the findings of both the California Court of Appeal and the

San Joaquin County Superior Court that petitioner asked to withdraw his Marsden motion and

continue with attorney Fattarsi as his counsel.  After the trial court stated that it was willing to

grant petitioner's Marsden motion, the judge informed petitioner that a new attorney would have

20

1   to "hit the ground running" in order to proceed to trial in a timely manner.  (Resp'ts' Lodged

2   Doc. No. 27 at 44.)  After a conference between petitioner and attorney Fattarsi, Fattarsi stated

3   that he was prepared to file a recusal motion against the prosecutor and that he would also be

4   able to "proceed on the merits of the case."  (Id. at 46.)  The following colloquy then occurred:

5           THE COURT:  So you're prepared to go forward on the merits in
              this matter; is that right?
6
            MR. FATTARSI:  Yes.
7
            THE DEFENDANT:  Which matter is that?  I don't understand.
8
            THE COURT:  If I understand what you're suggesting is you're
9             prepared to go forward on the trial on the merits here?

10  (Id. at 47.)  After discussing the particulars of the recusal motion, the trial court advised

11  petitioner as follows:

12          THE COURT:  It's necessary then that you withdraw your
              Marsden motion, Mr. Burgos, if you wish Mr. Fattarsi to stay
13            involved in this case because once I grant your motion, he's out of
              this case for all purposes.
14
            THE DEFENDANT:  I understand that.
15
            THE COURT:  I can't give you a Marsden for some purposes and
16            not for others.  It's like being pregnant, you are or you aren't.
              There's no partly.
17
            THE DEFENDANT:  I understand.
18

19  (Id. at 48-49.)

20          It is clear from this record that petitioner withdrew his Marsden motion and

21  elected to proceed with attorney Fattarsi as his lawyer for all purposes.  Petitioner's claim that he

22  refused to waive his Marsden motion or that he thought attorney Fattarsi would handle only the

23  recusal motion and the motion to dismiss the "strike prior" is contradicted by the above-quoted

24  portions of the record.  Under the circumstances presented here, appellate counsel was not

25  ineffective in failing to raise a claim that the trial court improperly proceeded with the trial after

26  /////

                                                  21

1  granting petitioner's <u>Marsden</u> motion.  Accordingly, petitioner is not entitled to relief on this

2  claim.

3          5.  <u>Violation of Petitioner's Right to a Speedy Trial (Claim IV)</u>

4          Petitioner claims that his appellate counsel rendered ineffective assistance when

5  he failed to raise a claim that the trial court "committed prejudicial error by violating the

6  petitioner's speedy trial rights which, in turn, coerced and/or influenced petitioner's decision to

7  plea [sic] no contest."  (Pet. at 6t.)  Petitioner contends that the change of plea hearing took place

8  "past the speedy trial deadline," that the trial court did not advise him of "the consequences of a

9  waiver to a speedy trial," and "did not obtain any waiver of petitioner's speedy trial rights."  (<u>Id.</u>)

10          The San Joaquin County Superior Court rejected this claim on the grounds that:

11          The recorded transcript of the "Change of Plea" hearing reflects
           that the trial court specifically asked Petitioner if he understood his

12          right to a speedy trial and if he voluntarily waived said right.
           Petitioner answered affirmatively to both queries.

13

14  (Resp'ts' Lodged Doc. No. 8 at 2.)

15          At the change of plea hearing, the trial judge informed petitioner that he was

16  required to "get on the record your acknowledgment that you understand certain rights and that

17  you waive or give up those rights."  (RT at 8.)  The judge stated, "those rights include that you

18  have the absolute right to a speedy and public trial by jury."  (<u>Id.</u>)  When asked whether he gave

19  up that right, petitioner answered, "Yes, I do."  (<u>Id.</u>)  The record therefore reflects that petitioner

20  waived his right to a speedy trial.  Under these circumstances, petitioner is unable to establish

21  that he was prejudiced by the failure of his appellate counsel to raise a claim that his plea was

22  rendered involuntary because of a violation of his right to a speedy trial.

23          Moreover, under California law, a speedy trial issue is not cognizable on appeal

24  following a guilty plea in a felony case.  <u>Turner</u>, 171 Cal. App. 3d at 128.  Accordingly, appellate

25  counsel would have been precluded from raising this issue on appeal.  For these reasons,

26  petitioner is not entitled to relief on this claim.

6. <u>The Trial Court's Failure to Strike the Prior Prison Term Allegation Before Accepting Petitioner's Plea of No Contest (Claim VI)</u>

Petitioner's next claim is that his appellate counsel rendered ineffective assistance by failing to argue that the trial court coerced petitioner's plea when it failed to dismiss his prior "strike" offense before the entry of his plea instead of dismissing it after taking the plea. (Pet. at 6aa.)

The state court record reflects that on August 21, 1997, the trial court ruled that the prosecutor could attempt to prove that petitioner's 1990 prior conviction for shooting at an inhabited dwelling was a "strike" within the meaning of California's Three Strikes Law. (Resp'ts' Lodged Doc. No. 23 (Augmented Reporter's Transcript on Appeal (hereinafter ART) at 198.) The court dismissed all other prior "strikes" and prior "serious felony" allegations. (<u>Id.</u>) On August 22, 1997, petitioner entered his no contest plea to all of the charges against him but reserved for a later trial the question of whether the 1990 prior conviction constituted a "strike." (RT at 4, 7.)

On August 27, 1997, a jury trial began on the issue of whether petitioner's 1990 conviction constituted a "strike." (<u>Id.</u> at 19, 24-34.)[9] The jury was unable to reach a verdict. (<u>Id.</u> at 377-78.) The prosecutor elected to retry the matter. (<u>Id.</u> at 378.) Prior to the second trial, petitioner's counsel moved to strike the 1990 prior conviction allegation, relying on the decision in <u>People v. Yarbrough</u>, 57 Cal. App. 4th 469 (1997).[10] (RT at 414.) After hearing argument, and relying largely on the decision in <u>Yarbrough</u>, the trial court ruled that petitioner's 1990 prior conviction could not be used as a "strike" against him. (<u>Id.</u> at 424-26.)

---

[9] At issue at this trial was whether petitioner was "convicted at an earlier trial of, one shooting into an occupied house, and, two, did he personally do the shooting." (<u>Id.</u> at 26.)

[10] In that case the California Court of Appeal held that any fact that would make an offense a serious felony must be tried to the same factfinder which tries the substantive offense. <u>People v. Yarbrough</u>, 57 Cal. App. 4th 469, 477 (1997). Here, because there was no finding by the jury that convicted petitioner of the 1990 offense that he was the shooter, the defense argued that the prosecution was precluded from relitigating that issue in this case. (<u>See</u> RT at 414.)

1    Even assuming arguendo that this claim is not foreclosed by his no contest plea,

2  petitioner has failed to demonstrate error by the trial court.  The trial court's August 21, 1997

3  ruling that the prosecutor could attempt to prove that petitioner's 1990 prior conviction for

4  shooting at an inhabited dwelling was a "strike" was issued prior to the Yarbrough decision.

5  Petitioner has not demonstrated that the court's ruling in this regard was incorrect.  Petitioner's

6  plea was not coerced by the trial court's failure to predict the holding in Yarbrough or the

7  holdings of any other cases which were decided after the entry of petitioner's plea.  Petitioner has

8  also failed to show any rational nexus between the trial judge's dismissal of the prior "strike"

9  allegation and his plea of no contest.  Nor has petitioner demonstrated that his plea was coerced

10  by the trial court's initial adverse ruling on his motion to dismiss the 1990 prior conviction

11  allegation.  Further, petitioner cannot point to any improper advice concerning the prior

12  conviction allegation by either the trial court or his counsel at the time he entered his plea.  For

13  these reasons, petitioner has failed to demonstrate that his appellate counsel would have probably

14  prevailed on appeal if he had raised this issue.  Accordingly, petitioner is not entitled to relief on

15  this claim.

16    7.  Ineffective Assistance of Counsel at the Hearing on Petitioner's Motion to Set

17  Aside His Plea (Claim VII)

18    Petitioner claims that his appellate counsel rendered ineffective assistance when

19  he failed to argue on appeal that "the trial court committed reversible error when it continued

20  with court proceedings despite the fact petitioner did not have effective assistance of counsel

21  during the motion and hearing to withdraw the guilty plea."  (Pet. at 6cc.)  Petitioner complains

22  that attorney Casenave: (1) did not conduct sufficient investigation to obtain evidence that

23  petitioner's previous counsel, attorney Fattarsi, had provided petitioner improper advice

24  concerning his no contest plea; (2) did not visit or communicate with petitioner; and (3) did not

25  conduct any investigation, obtain necessary records, or advise petitioner how to prepare for the

26  hearing on the motion to withdraw his plea.  (Id.)  Petitioner also complains that the trial court

1   failed to hold a hearing on his <u>Marsden</u> motion, made at the beginning of the hearing on his

2   motion to withdraw his plea, by which he sought to substitute another attorney for Mr. Casenave.

3   (<u>Id.</u> at 6cc-6dd.)

4          Petitioner has failed to demonstrate prejudice with respect to his claim that

5   attorney Casenave rendered ineffective assistance of counsel in connection with the motion to

6   withdraw petitioner's no contest plea.  Petitioner's conclusory allegations of errors by Casenave

7   are insufficient to support his claims in this regard.  <u>Jones v. Gomez</u>, 66 F.3d at 204; <u>James v.</u>

8   <u>Borg</u>, 24 F.3d at 26.  Indeed, a review of the record reflects that attorney Casenave's

9   representation of petitioner in connection with the motion to withdraw the plea was well within

10  the wide range of professionally competent assistance.  Attorney Casenave filed an appropriate

11  written motion, arguing that petitioner was unable to enter a voluntary plea because of his mental

12  condition, lack of appropriate medications and the ineffective assistance provided by attorney

13  Fattarsi.  (CT at 581-85; RT at 447.)  Petitioner testified at the hearing regarding his complaints

14  about deputy public defender Fattarsi and the impact of his own medical condition on his entry of

15  the no contest plea.  (RT at 448-57.)  Petitioner has failed to point to any specific omissions by

16  attorney Casenave that, if corrected, would have led to a different result on the motion to

17  withdraw petitioner's no contest plea.

18         Petitioner has also failed to demonstrate prejudice with respect to his claim that

19  the trial court erred by failing to hear or rule on the <u>Marsden</u> motion petitioner wished to raise

20  immediately prior to the hearing on his motion to withdraw his no contest plea.  Petitioner now

21  states that this motion was directed at attorney Casenave.

22         On appeal, petitioner argued that the trial court erred when it would not allow him

23  to explain the reasons underlying his post-plea <u>Marsden</u> motions.  (Opinion at 2.)  The California

24  Court of Appeal rejected petitioner's argument in this regard.  In reaching its decision, the

25  appellate court found that both of petitioner's post-plea <u>Marsden</u> motions were directed at

26  attorney Fattarsi.  The court reasoned as follows:

25

Under the Marsden standard, "'When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance.'"[11] Where, however, a trial court has heard a defendant's complaints about his attorney pursuant to a Marsden motion, that defendant's later attempt to similarly complain does not compel the court to hold another Marsden hearing.[12]

The trial court here did not allow defendant to explain the reasons for his two post-plea Marsden motions.  Prior to defendant's plea, the trial court had replaced public defender Dittman with public defender Fattarsi, and had entertained two Marsden motions from defendant regarding attorney Fattarsi, granting one of them (although defendant elected to withdraw this successful Marsden motion).

Even if we assume the trial court erred in not allowing defendant to explain the reasons for his two post-plea Marsden motions, we find the error harmless.

It is true that decisions have stated that "Marsden error is *typically* treated as prejudicial per se, since the very nature of the error precludes meaningful appellate review of its prejudicial impact."[13] Nevertheless, Marsden itself did not enunciate a per se reversible error test; it applied the Chapman standard of whether the error was harmless beyond a reasonable doubt.[14]  In rare instances, meaningful appellate review of a Marsden error's prejudicial impact can be undertaken.[15]  This is one of those rare instances.

The decision in Washington provides the analytical framework.[16] The court/counsel colloquies quoted above make clear that defendant's two post-plea Marsden motions were directed at public defender Fattarsi, not private attorney Casenave.  The minute order

---

[11] People v. Memro (1995) 11 Cal. 4th 786, 857, quoting People v. Fierro (1991) 1 Cal. 4th 173, 204; see Marsden, supra, 2 Cal. 3d at pages 124-125.

[12] People v. Clark (1992) 3 Cal. 4th 41, 104 (Clark).

[13] People v. Hill (1983) 148 Cal. App. 3d 744, 755 (italics added).

[14] Marsden, supra, 2 Cal. 3d at page 126; Chapman v. California (1967) 386 U.S. 18 [17 L.Ed.2d 705]; accord, People v. Chavez (1980) 26 Cal. 3d 334, 348-349; People v. Washington (1994) 27 Cal. App. 4th 940, 944 (Washington).

[15] Washington, supra, 27 Cal. App. 4th at page 944.

[16] Washington, supra, 27 Cal. App. 4th at page 944.

for the first of these two motions recognizes this state of affairs as well.

Like the defendant in <u>Washington</u>, the defendant here "has made no showing . . . either that his [post-plea] <u>Marsden</u> motion[s] would have been granted had [they] been heard, or that a more favorable result would have been achieved had the motion[s] in fact been granted."[17]  The challenged motions were made only *after* defendant had already pleaded no contest.  At this point, the only bases for a <u>Marsden</u> motion were that attorney Fattarsi had acted incompetently prior to defendant's plea, or with regard to defendant's plea, or with regard to the motion to withdraw the plea; or, possibly, that defendant believed that Fattarsi would be unable to represent him properly at sentencing.[18]

As noted, defendant centered his motion to withdraw his plea on the alleged ineffective assistance provided by public defenders Dittman and Fattarsi (defendant himself drafted the bulk of the motion to withdraw).  As also noted, at the hearing on the motion to withdraw, defendant testified in detail to the allegedly ineffective assistance that attorney Fattarsi provided during his entire representation of defendant.  In denying the motion to withdraw, the trial court stated with respect to the ineffective assistance point that "most of what we talked about was already discussed I think at the earlier <u>Marsden</u> motion.  And I've heard nothing new that would cause me to revisit that."  Against this backdrop, the motion to withdraw served in effect as the post-plea <u>Marsden</u> motion against attorney Fattarsi, and defendant has made no showing that this <u>Marsden</u> motion would have been granted had it been separately heard.

Defendant does not fare any better on his post-plea <u>Marsden</u> motions when we turn to the issue of sentencing.  Attorney Fattarsi represented defendant at sentencing.  Fattarsi asked for a continuance of the sentencing hearing because he had not been present at defendant's "last appearance" (the motion to withdraw the plea), and had not had a chance to "review[] presentence reports with [defendant]."  The trial court granted the continuance, but specified a tentative sentence of 21 years and 4 months.  This was the maximum sentence that could be imposed under the trial court's calculations.  The court remarked:  "And I will tell you candidly if I could do more, I would."

At the continued sentencing hearing, attorney Fattarsi argued successfully that the trial court had erred in its tentative sentence, which should have been only 19 years and 8 months.  Fattarsi's

---

[17]  <u>Washington</u>, <u>supra</u>, 27 Cal. App. 4th at page 944.

[18]  <u>See</u> <u>Washington</u>, <u>supra</u>, 27 Cal. App. 4th at page 944; <u>see also</u> <u>People v. Smith</u> (1993) 6 Cal. 4th 684, 693-695, 701 [conc. opn. of Baxter, J.].

1
2

> efforts saved defendant nearly two years of prison time.  It is clear
> the trial court was not going to sentence defendant to anything less
> than 19 years and 8 months.

3
4
5

> Defendant would not have achieved a more favorable result had his
> post-plea Marsden motion(s) been granted.  We find any error in
> not allowing defendant to explain the basis of such a motion to be
> harmless beyond a reasonable doubt.[19]

6   (Opinion at 6-9.)

7          Where a defendant is proceeding with the assistance of counsel, he may move to

8   dismiss or substitute his appointed or retained attorney.  The grant or denial of such a motion

9   may depend on a number of factors including the timeliness of the motion, the adequacy of the

10  court's inquiry and the nature of the conflict between the defendant and current counsel. United

11  States v. Prime, 431 F.3d 1147, 1155 n.4 (9th Cir. 2005) (and cases cited therein), cert. denied

12  ___U.S.___, 128 S. Ct. 171 (2007); United States v. McClendon, 782 F.2d 785, 789 (9th Cir.

13  1986); Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982).  The Ninth Circuit has ruled that in

14  assessing a Marsden claim in the context of a federal habeas corpus proceeding, the Sixth

15  Amendment requires only "an appropriate inquiry into the grounds of such a motion, and that the

16  matter be resolved on the merits before the case goes forward."  Schell v. Witek, 218 F.3d 1017,

17  1025 (9th Cir. 2000) (en banc).  See also Hudson, 686 F.2d at 829 (state trial court's summary

18  denial of a defendant's motion for new counsel violated the Sixth Amendment because "a trial

19  court must permit a defendant seeking a substitution of counsel after the commencement of the

20  prosecution's case to specify the reasons for his request"); Baker v. Yates, No. 04-CV-1533

21  H(BLM), 2007 WL 2156072, *7 (S.D. Cal. July 25, 2007) (finding that the state court's denial of

22  petitioner's Marsden motion was not contrary to or an unreasonable application of federal law).

23          Here, the rejection of petitioner's Marsden claim by the California courts was not

24  contrary to or an unreasonable application of federal law.  The California Court of Appeal found

25

26          [19] Washington, supra, 27 Cal. App. 4th at page 944; People v. Chavez, supra, 26 Cal. 3d
    at pages 348-349; Marsden, supra, 2 Cal. 3d at page 126.

1   that petitioner's first post-plea <u>Marsden</u> motion was directed at attorney Fattarsi and not attorney

2   Casenave.  This factual finding is fairly supported by the record.  Neither petitioner nor attorney

3   Casenave objected when the trial judge expressed the understanding that the <u>Marsden</u> motion

4   was directed at attorney Fattarsi, nor did they inform the judge that the motion was actually

5   directed to attorney Casenave.  (<u>See</u> RT at 445.)  This court also notes that at sentencing, attorney

6   Fattarsi made another <u>Marsden</u> motion.  (<u>Id.</u> at 470-71.)  The trial judge responded, "No.  We've

7   been through that multiple times.  There will be no further <u>Marsdens</u>.  (<u>Id.</u> at 471.)  Neither

8   petitioner nor attorney Fattarsi informed the sentencing judge that any of the previous <u>Marsden</u>

9   motions had been directed at attorney Casenave, nor did they correct the judge when he stated

10  that he had "been through that multiple times."  Although petitioner now argues that his post-plea

11  <u>Marsden</u> motion was instead directed at attorney Casenave, his self-serving statements in this

12  regard does not constitute clear and convincing evidence sufficient to rebut the appellate court's

13  contrary finding.  <u>See</u> 28 U.S.C. § 2254(e)(1).

14          As noted by the California Court of Appeal, the trial court conducted a complete

15  and thorough hearing on petitioner's complaints with respect to deputy public defender Fattarsi,

16  both in connection with petitioner's previous <u>Marsden</u> motions and in the motion to set aside his

17  no contest plea.  Petitioner was given several opportunities to explain the basis for all of his

18  complaints about his trial counsel.  Pursuant to the authorities cited above, this was sufficient to

19  pass constitutional muster.  Further, as explained above, there is no competent evidence that

20  attorney Fattarsi was unprepared to represent petitioner, that his advice to plead no contest was

21  improper, or that there was a conflict between petitioner and his trial attorney so great "that it

22  resulted in a total lack of communication or other significant impediment that resulted in turn in

23  an attorney-client relationship that fell short of that required by the Sixth Amendment."  <u>Schell</u>,

24  218 F.3d at 1026.  Under these circumstances, appellate counsel was not ineffective in failing to

25  raise a claim that the trial court erred in refusing to allow petitioner to explain the basis for his

26  <u>Marsden</u> motion directed at attorney Casenave.

1       8.  Violation of Petitioner's Rights at Preliminary Hearing (Claim VIII)

2            Petitioner's next claim is that his appellate counsel rendered ineffective assistance

3  when he failed to argue that petitioner's constitutional rights were violated at his preliminary

4  hearing.  Specifically, petitioner alleges that the interpreter for two of the prosecution witnesses

5  was not certified to interpret the Filipino dialect spoken by those witnesses.  (Pet. at 6ee.)

6  Petitioner contends that the interpreter and the witnesses could not understand each other.  (Id.)

7  He claims that this situation violated his right to "face his accusers."  (Id.)  Petitioner also argues

8  that his trial counsel provided ineffective assistance during the preliminary hearing because he

9  failed to effectively impeach prosecution witness Becky Jaramillo with evidence that she had

10 committed tax and welfare fraud.  (Id. at 6ee-6ff.)

11           Petitioner has failed to demonstrate prejudice with respect to these claims.

12 Petitioner's claims that the interpreter at the preliminary hearing was unqualified and that his

13 counsel rendered ineffective assistance are both pre-plea constitutional claims which, as

14 discussed above, are not cognizable on appeal in California.  Appellate counsel's failure to raise

15 these meritless claims does not constitute ineffective assistance.

16           In any event, petitioner's conclusory allegations are insufficient to support his

17 claim that the use of an unqualified translator violated his right to confront the witnesses against

18 him.  Petitioner has not identified the nature of any exculpatory evidence which the witness

19 possessed and could not communicate to the court due to the translator or any specific instance of

20 prejudice connected to mistranslated or untranslated testimony.  "While the general standard for

21 interpreters requires continuous word-for-word translation, occasional lapses in the standard will

22 not necessarily contravene a defendant's constitutional rights."  United States v. Long, 301 F.3d

23 1095, 1105 (9th Cir. 2002).

24           Petitioner has also failed to substantiate his claim that his counsel failed to

25 impeach prosecution witness Becky Jaramillo at his preliminary hearing with evidence that she

26 had committed tax and welfare fraud.  Petitioner has provided no proof in support of these

30

1   assertions, and his vague and conclusory allegations in this regard are insufficient to demonstrate

2   either ineffective assistance or prejudice.  Jones v. Gomez, 66 F.3d at 204; James v. Borg, 24

3   F.3d at 26.

4          For all of these reasons, petitioner is not entitled to relief on these claims of

5   ineffective assistance of appellate counsel.

6         9.   Denial of Petitioner's Motion to Recuse the Prosecutor (Claim IX)

7          Petitioner's next claim is that "appellate counsel is ineffective for failure to raise

8   on direct appeal that the trial court cannot influence petitioner to plea [sic] no contest by abusing

9   its discretion in denying petitioner's recusal motion."  (Pet. at 6gg.)  Petitioner contends that:

10         there was clear bias against petitioner by [the prosecutor], name
     calling, Court of Appeal rulings of misconduct, lying and
11         misleading the court about the evidence and facts of the current
     case and prior case.  Upon release to parole petitioner and [the
12         prosecutor] talked outside of court house and shook hands.

13   (Id.)

14          The San Joaquin County Superior Court rejected petitioner's claim that the trial

15   court erred in denying his motion seeking recusal of the prosecutor, reasoning as follows:

16         "Under Pen. Code, § 1424, governing motions to disqualify the
     prosecuting attorney, a conflict of interest must be shown, that is,
17         there must be a reasonable possibility that the prosecuting
     attorney's office may not exercise its discretionary function in an
18         evenhanded manner.  Second, the conflict must be so grave as to
     render it unlikely that the defendant will receive fair treatment.  In
19         other words, whether the alleged conflict is characterized as actual
     or only apparent, recusal is not required under § 1424 unless the
20         potential for prejudice is "real" and rises to the level of a likelihood
     of unfairness.  Consistent with these principles, a disabling conflict
21         does not exist simply because the district attorney and the
     defendant have been adversaries in other legal proceedings, even
22         where the defendant previously prevailed.  Other evidence of
     overriding bias must be present to warrant disqualification."
23         People v. Milwee (1998) 18 C.4th 96.

24         Petitioner has made no showing that the trial court abused its
     discretion in denying the motion to recuse because Petitioner
25         makes no showing that recusal was warranted.

26   (Resp'ts' Lodged Doc. No. 8 at 3.)

1    Again. petitioner's claim in this regard is a pre-plea constitutional claim which is

2  not cognizable on appeal in California.  Appellate counsel's failure to raise this meritless claim

3  does not constitute ineffective assistance and petitioner is not entitled to relief.

4    10.  <u>Failure to Advise Petitioner of the Restitution Consequences of his Plea</u>

5  <u>(Claim X)</u>

6    Petitioner argues that his appellate counsel rendered ineffective assistance by

7  failing to argue that petitioner's plea of no contest was involuntary because neither his counsel

8  nor the trial court advised him that he would be required to pay a restitution fine as a result of his

9  plea.  (Pet. at 6hh.)  This claim was summarily rejected by all of the state courts to which it was

10  presented.

11    It is undisputed that the trial court did not advise petitioner of the possibility of

12  restitution order during the plea colloquies.  There is also no evidence that petitioner was aware

13  that restitution might be ordered at the time he entered his no contest plea.  However, the

14  probation report received by the parties and the court prior to sentencing included a

15  recommendation that a restitution fine be imposed.  (Resp'ts' Lodged Doc. Nos. 25 and 26.)

16  Petitioner raised no objection to the probation report's recommendation in this regard prior to his

17  sentencing. At sentencing, petitioner was ordered to pay restitution in the amount of $4,240.  (RT

18  at 502.)  Again, neither petitioner nor his counsel objected to the imposition of the restitution fine

19  at that time.

20    As described above, to comport with due process, a guilty plea must be knowing,

21  intelligent, and voluntary.  <u>Boykin</u>, 395 U.S. at 242.  A guilty plea can be voluntary only if the

22  defendant enters the plea fully aware of the direct consequences of his plea.  <u>Brady</u>, 397 U.S. at

23  748-49; <u>Torrey v. Estelle</u>, 842 F.2d 234, 235 (9th Cir. 1988).  Before accepting a guilty plea, a

24  court must advise a defendant of the "range of allowable punishment" that may be imposed as a

25  result of the plea.  <u>Id.</u> at 235; <u>see also</u> <u>United States ex rel. Pebworth v. Conte</u>, 489 F.2d 266, 268

26  /////

1   (9th Cir. 1974).  A trial court is not required to advise a defendant of the collateral consequences

2   of a guilty plea.  Torrey, 842 F.2d at 235.

3          In this case, the restitution fine was imposed pursuant to California Penal Code §

4   1202.4.  (Resp'ts' Lodged Doc. No. 25 at 8.)  That code section mandates imposition of a fine

5   ranging from $200 to $10,000 for a felony conviction, absent a finding by the trial court of

6   "extraordinary and compelling reasons not to do so."  See Cal. Penal Code § 1202.4(b) (effective

7   to December 31, 1999.)  Because every person convicted of a felony in California faces the

8   probability that a restitution fine will be imposed as a consequence of his conviction, exposure to

9   the fine is a direct consequence of petitioner's plea.  Petitioner should have been advised of this

10  consequence before he was permitted to enter his plea.  Accordingly, it follows that the trial

11  court's failure to notify petitioner of the restitution fine at issue herein rendered his plea

12  involuntary and, in turn, violated his Fourteenth Amendment right to due process.

13         This Court next must decide if this constitutional error resulted in "actual

14  prejudice," i.e., that it "had a substantial and injurious effect or influence" on the outcome of the

15  case.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States,

16  328 U.S. 750, 776 (1946)).  See also Carter v. McCarthy, 806 F.2d 1373, 1377 (9th Cir. 1986)

17  (finding that failure to inform petitioner of direct consequence of plea was subject to harmless

18  error analysis).

19         Although petitioner now claims that he would not have pled no contest had he

20  been advised of the possibility of a restitution order, the court concludes that disclosure of that

21  possibility at the time of the entry of plea could not have reasonably affected petitioner's decision

22  to plead no contest.  At the change of plea hearing, petitioner's counsel stated that he had

23  sufficiently discussed with petitioner any "rights, defenses and consequences" related to his no

24  contest plea.  (RT at 9-10.)  Further, the restitution order was clearly a minor term in this case

25  which was collateral to the admitted reason for petitioner's decision to plead guilty: his decision

26  to focus on dismissing the one remaining prior "strike" allegation.  Petitioner's lack of concern

about the imposition of a restitution fine is evidenced by his failure to make any objection

whatsoever either prior to sentencing when the restitution fine was recommended as part of his

sentence in the probation report or when the fine was imposed at the sentencing hearing.[20]

The court notes that petitioner is not raising a claim in his petition before this

court that his no contest plea was involuntary because he was not advised that he might receive a

restitution fine. Rather, his claim is solely one of ineffective assistance of appellate counsel for

failing to raise this issue on appeal. In light of this court's conclusion that petitioner's no contest

plea was not rendered involuntary by virtue of the trial court's failure to advise him of the

possible imposition of a restitution fine because such an advisement could not have affected

petitioner's decision to plead no contest, petitioner's appellate counsel was not ineffective in

failing to challenge the plea on appeal. There is no reasonable probability that petitioner would

have prevailed on such a claim on appeal. See Strickland, 466 U.S. at 694. Accordingly,

petitioner is not entitled to relief on this claim of ineffective assistance of appellate counsel.

11. <u>Improper Imposition of Restitution Fine Without an "Ability to Pay" Hearing</u>
<u>(Claim XI)</u>

Petitioner's next claim is that his appellate counsel rendered ineffective assistance

"for failure to raise on direct appeal that the court cannot impose restitution without an ability to

pay hearing." (Pet. at 6hh.) Petitioner states that he did not waive his state law right to such a

hearing. (<u>Id.</u>)

The San Joaquin County Superior Court rejected this claim, reasoning as follows:

This issue is one that is not appropriate for habeas corpus relief.
"Habeas corpus, unlike a direct appeal, does not simply inquire
into the correctness of the trial court's judgment. The scope of
habeas corpus is more limited. If it only for correction of

---

[20] The court notes that this case does not appear to have involved a plea agreement. <u>See</u>
Traverse at consecutive p. 27. When a promise or agreement by the prosecutor is part of the
consideration inducing a defendant's plea, a sentence that exceeds the promise cannot be
enforced over the defendant's objections. <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971).
Because the prosecutor in this case made no promises in order to induce petitioner's plea, there is
no issue regarding breach of a plea contract.

1    'fundamental jurisdictional or constitutional type' errors." <u>In re</u>
2    <u>Harris</u> (1993) 5 C.4th 813, 828.

3    (Resp'ts' Lodged Doc. No. 8 at 3.)

4          Petitioner's claim that the state court violated state law in failing to hold an

5    "ability to pay hearing" prior to imposing a restitution fine is not cognizable in this federal

6    habeas corpus proceeding.  As the United States Supreme Court has instructed:

7            We have stated many times that federal habeas corpus relief does
        not lie for errors of state law. Today, we reemphasize that it is not
8            the province of a federal habeas court to reexamine state-court
        determinations on state-law questions.
9

10   <u>Estelle</u>, 502 U.S. at 67-68 (citations and internal quotation marks omitted).  Thus, a violation of

11   state law, standing alone, is not cognizable in federal court on habeas corpus.  <u>Little</u>, 449 F.3d at

12   1082; <u>Park</u>, 202 F.3d at 1149 (citing <u>Estelle</u>, 502 U.S. at 67).  Accordingly, petitioner is not

13   entitled to relief on this claim.

14         12.  <u>Failure to Advise Petitioner of the Consequences of his No Contest Plea</u>

15   <u>(Claim XIII)</u>

16         Petitioner's next claim is that his appellate counsel rendered ineffective assistance

17   by failing to raise a claim that petitioner's plea was involuntary because he was not advised that

18   "he would serve 85% of his sentence."  (Pet. at 6ii.)  In the traverse, petitioner also alleges that he

19   was not advised of "the penal consequence of probation ineligibility."  (Traverse at consecutive

20   p. 29.)  Petitioner states that if he had been properly advised he would not have pled no contest.

21         The state court record reflects that at the time he entered his plea petitioner was

22   advised that if the jury found the prior "strike" offense allegation true, his maximum sentence

23   could be as much as thirty-four years in prison  (RT at 11.)  Petitioner was also advised that the

24   trial judge would determine the actual sentence, that the judge had "made no decision yet as to

25   the appropriate sentence," and that the judge would not make his final decision until he had read

26   the probation report.  (<u>Id.</u>)  Petitioner stated that he understood these advisements.  (<u>Id.</u>)

1   Petitioner's counsel informed the court and petitioner that, pursuant to his calculations, if the jury

2   found the prior "strike" allegation to be not true, petitioner's maximum prison term was

3   "nineteen years, eight months." (Id. at 10.)  Petitioner was also advised that he "may or may not

4   be eligible for probation" and that state law "require[d] a prison sentence for these matters." (Id.

5   at 11.)

6          Under these circumstances, petitioner was fully advised of the "range of allowable

7   punishment" that could result from his plea.  See Torrey, 842 F.2d at 235.  Petitioner's claims

8   that he should have been advised regarding possible limitations on the awarding of good time

9   while imprisoned or that he would not be eligible for a grant of probation are clearly insufficient

10  to render his no contest plea involuntary.  His appellate counsel was therefore not ineffective in

11  declining to raise these frivolous issues on appeal.  Accordingly, petitioner is not entitled to relief

12  on this claim.

13          C.  Cumulative Error (Claim XII)

14          Petitioner claims that the cumulative effect of all of the errors committed by his

15  attorneys and the trial court, described above, violated his rights to due process and equal

16  protection of the law.  (Pet. at 6hh; Traverse at consecutive p. 29.)

17          The Ninth Circuit has determined that it is clearly established United States

18  Supreme Court precedent that the combined effect of multiple trial errors may give rise to a due

19  process violation if it renders a trial fundamentally unfair, even where each error considered

20  individually would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007)

21  (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) and Chambers v. Mississippi, 410

22  U.S. 284, 290 (1973)).  "[T]he fundamental question in determining whether the combined effect

23  of trial errors violated a defendant's due process rights is whether the errors rendered the criminal

24  defense 'far less persuasive,' Chambers, 410 U.S. at 294, and thereby had a 'substantial and

25  injurious effect or influence' on the jury's verdict."  Parle, 505 F.3d at 928 (quoting Brecht, 507

26  U.S. at 637).

1    This court has addressed each of petitioner's claims and has concluded that no

2    error of constitutional magnitude occurred.  This court also concludes that the alleged errors,

3    even when considered together, did not render petitioner's defense "far less persuasive," nor did

4    they have a "substantial and injurious effect or influence on the jury's verdict."  See Parle, 505

5    F.3d at 928.  Accordingly, petitioner is not entitled to relief on his claim of cumulative error.

6    D.  Opinion of the California Court of Appeal (Claim XIV)

7    Petitioner claims that the California Court of Appeal erred in determining that his

8    two post-plea Marsden motions were directed toward attorney Fattarsi and not attorney

9    Casenave.  (Pet. at 6ii.)  Put another way, petitioner is claiming that the opinion of the California

10   Court of Appeal was based on an unreasonable construction of the facts of this case.

11   For the reasons discussed above, this court agrees with the California Court of

12   Appeal that petitioner's post-plea Marsden motions were directed at attorney Fattarsi and not

13   attorney Casenave, notwithstanding petitioner's claims to the contrary.  The court's conclusion in

14   this regard is supported by the court/counsel colloquies contained in the record and the failure of

15   petitioner and his counsel to object when the trial court expressed its understanding that the

16   motions were directed at attorney Fattarsi.  Accordingly, petitioner is not entitled to relief on his

17   claim that the decision of the state appellate court is based on an unreasonable determination of

18   the facts in light of the evidence presented in the state court proceeding.

19   E.  California Penal Code § 296 (Claim XV)

20   Petitioner's final claim is that the forced extraction of DNA samples by prison

21   authorities pursuant to California Penal Code § 296 violated his "guilty plea agreements" and the

22   "4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution."  (Pet. at 6jj.)

23   Petitioner explains his claim in this regard as follows:

24   On August 22, 1997, defense counsel advised petitioner to plea
     [sic] guilty, counsel and the court did not advise petitioner that he
25   would be required to provide DNA blood samples.

26   DNA blood extraction by the State of California, Department of
     Corrections, violates the Fourth Amendment because it constitutes

1          a suspicionless search with the objective of furthering law
           enforcement purpose.  (Penal Code Section 296)
2
           Penal Code Section 296, DNA blood extraction violates the Ex
3          Post Facto Clause of the Constitution which prohibits states from
           enacting any law that changes the punishment, and inflicts a greater
4          punishment, than the law annexed to a crime when committed.
           Penal Code Section 296 was not annexed to petitioner's crimes
5          when committed.

6          If properly advised of the consequence of P.C. Sec. 296, petitioner
           would not have plead guilty to charges he is innocent of and would
7          have went to trial.

8     (Id.)

9          Petitioner raised this claim in a petition for a writ of habeas corpus filed in the San

10    Joaquin County Superior Court.  (Resp'ts' Lodged Doc. No. 13.)  The Superior Court described

11    the background to the claim as follows:

12          Petitioner complains, commencing June 2002, prison officials
            demanded he provide blood and saliva samples for DNA testing
13          pursuant to the provisions of Penal Code § 296.  Petitioner refused
            on the ground he was not informed such mandatory testing would
14          be a consequence of his plea and did not consent to such testing in
            his plea agreement.  Prison officials imposed disciplinary sanctions
15          on petitioner on two occasions for refusing to provide blood and
            saliva samples.  Thereafter, on January 22, 2003, prison officials
16          took blood and saliva samples from petitioner by the "calculated
            use of force".
17

18    (Resp'ts' Lodged Doc. No. 14 at 1-2.)

19          In state court, petitioner claimed that enforcement of California Penal Code § 296

20    by the California Department of Corrections violated the Ex Post Facto Clause because it

21    "imposed a significantly greater punishment than contemplated when he pled no contest to the

22    charges in 1997."  (Id. at 2.)  The  San Joaquin County Superior Court concluded that § 296(a)

23    applied to petitioner and authorized the Department of Corrections to obtain a DNA sample from

24    him.  This was true, according to the Superior Court, even though Penal Code § 296 was enacted

25    /////

26    /////

38

1   after petitioner was convicted and "regardless of the fact petitioner entered his plea without

2   notice such mandatory testing would be a consequence of the plea." (Id. at 2-3.)[21]

3          Petitioner appears to be raising three separate claims by way of his allegations

4   described above: an ex post facto claim, a Fourth Amendment claim and a claim that his plea was

5   involuntary because he was not advised of the possibility that he might have to give a DNA

6   sample in the future.  All of these claims lack merit and should be rejected.

7          The state court's rejection of petitioner's claim that California Penal Code § 296

8   violates the Fourth Amendment was not contrary to federal law.  See United States v. Kincade,

9   379 F.3d 813 (9th Cir. 2004) (holding that a person subject to conditional release may be

10  compelled to provide a DNA sample in the absence of individualized suspicion of criminal

11  activity without violating the Fourth Amendment); Rise v. Oregon, 59 F.3d 1556, 1562-63 (9th

12  Cir. 1995) (holding that Oregon statute requiring certain prisoners to provide blood samples to

13  DNA data bank does not violate Fourth Amendment).

14         Petitioner's contention that § 296 violates the Ex Post Facto Clause also lacks

15  merit.  See Rise, 59 F.3d at 1562 (holding that Oregon statute requiring prisoners to provide

16  DNA samples does not violate Ex Post Facto Clause because statute's purpose is to create a data

17  bank to help identify and prosecute criminals, not to punish convicts).

18         Finally, petitioner has failed to demonstrate that the trial court's failure to advise

19  him of the possibility that DNA samples might be collected in the future rendered his no contest

20  plea involuntary.  The remote possibility that a statute would be enacted in California requiring

21  DNA collection from prisoners convicted of certain crimes is, at most, a collateral consequence

22  of petitioner's plea.  As discussed above, a trial court is not required to advise a defendant of the

23  collateral consequences of a guilty plea.  Torrey, 842 F.2d at 235.

24

25         [21]  California Penal Code § 296 provides that the persons described in the statute are
    required to provide "buccal swab samples, right thumbprints, and a full palm print impression of
26  each hand, and any blood specimens or other biological samples required pursuant to this chapter
    for law enforcement identification analysis."

39

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 28, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
burgos21.hc

40